# 23-814(L)

## 23-855(XAP)

# United States Court of Appeals
# for the Second Circuit

JESUS SANTIAGO,

*Plaintiff–Appellee–Cross-Appellant,*

v.

SUPERINTENDENT BRIAN FISCHER, individually and as Commissioner of the New York State Department of Corrections and Community Supervision, ANTHONY J. ANNUCCI, individually and as Deputy Commissioner of and Counsel to DOCS, TERRENCE X. TRACY, individually and as Chief Counsel to DOP,

*Defendants–Appellants–Cross-Appellees.*

*(Caption continues inside front cover.)*

On Appeal from the United States District Court
for the Eastern District of New York

## REPLY BRIEF FOR APPELLANTS

<table>
<tr><td></td><td>LETITIA JAMES<br><i>Attorney General</i><br><i>State of New York</i></td></tr>
<tr><td>BARBARA D. UNDERWOOD<br><i>Solicitor General</i><br>ANDREA OSER<br><i>Deputy Solicitor General</i><br>BLAIR J. GREENWALD<br><i>Assistant Solicitor General</i><br><i>of Counsel</i></td><td>Attorney for Appellants<br>28 Liberty Street<br>New York, New York 10005<br>(212) 416-6102<br><br>Dated: March 4, 2024</td></tr>
</table>

ANDREW M. CUOMO, individually and as Governor of the State of New York, ANDREA W. EVANS, individually and as Chairwoman of the New York State Board of Parole, State of New York, JOHN DOES 1-10, DOCS Supervisory, Training, and Policy Personnel, LUCIEN J. LECLAIRE, JR., individually and as former acting Commissioner of DOCS, GLENN S. GOORD, individually and as former acting Commissioner of DOCS, ANTHONY G. ELLIS, II, individually and as former Chairman and Chief Executive Officer of DOP, GEORGE B. ALEXANDER, individually and as former Chairman and Chief Executive Officer of DOP, KEVIN G. LUDLOW, individually and as DOP Commissioner, LISA BETH ELOVICH, individually and as DOP Commissioner, SALLY A. THOMPSON, individually and as DOP Commissioner, ARROYO, individually and as DOP Area Supervisor, WILLIAM MCCARTNEY, individually and as DOP Area Supervisor, MCKINNEY, individually and as DOP Area Supervisor, FLEISCHMAN, individually and as DOP Senior Parole Officer, PAREDEs, individually and as DOP Senior Parole Officer, DARRYL STEVENSON, individually and as DOP Senior Parole Officer, J. MASON, individually and as DOP Parole Officer, CYNTHIA JOHNSON, individually and as DOP Parole Officer, P ALVAREZ, individually and as DOP Parole Officer, RICHARD CORRADO, individually and as DOP Parole Officer, COUNCIL, individually and as DOP Parole Officer, ZUNNO, individually and as DOP Parole Officer, JOHN DOES 11-20, DOP Supervisory, Training, and Policy Personnel, ROBERT J. DENNISON, individually and as former Chairman of DOP,

*Defendants.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................ii

PRELIMINARY STATEMENT ................................................................ 1

ARGUMENT ........................................................................................ 5

POINT I

CONSISTENT WITH *VINCENT II* AND *APONTE*, THIS COURT SHOULD
VACATE THE JUDGMENT AND REMAND FOR FURTHER PROCEEDINGS
TO ALLOW EVIDENCE OF IMPEDIMENTS AND PROPERLY HOLD
SANTIAGO TO HIS BURDEN OF PROOF ................................................... 5

    A.    Defendants Properly Preserved the Impediments Issue. ........ 6

    B.    The District Court Erred as a Matter of Law in
           Excusing Santiago from His Burden of Proving
           Causation and Damages. ........................................................ 13

    C.    The District Court's Error at Issue in Defendants'
           Appeal Was Not Harmless. ..................................................... 20

    D.    The Same Relief Is Appropriate in Santiago's
           Cross-Appeal. ........................................................................ 29

POINT II

DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ........................ 33

CONCLUSION ...................................................................................... 35

# TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|

*Anderson v. Branen,*
  17 F.3d 552 (2d Cir. 1994) ................................................. 11

*Aponte v. Perez,*
  75 F.4th 49 (2d Cir. 2023) ............................... 1, 5, 7, 18

*Applebaum v. American Exp. Isbrandtsen Lines,*
  472 F.2d 56 (2d Cir. 1972) ................................................. 24

*Betances v. Fischer,*
  837 F.3d 162 (2d Cir. 2016) ......................................... 14, 17

*Betances v. Fischer,*
  No. 11-cv-3200, 2024 WL 182044 (S.D.N.Y. Jan. 17, 2024) .............. 18

*Boyce v. Soundview Tech. Grp., Inc.,*
  464 F.3d 376 (2d Cir. 2006) ......................................... 13, 24

*Earley v. Murray,*
  451 F.3d 71 (2d Cir. 2006) ......................................... 12, 22

*Harlow v. Fitzgerald,*
  457 U.S. 800 (1982) ...................................................... 34

*Hassell v. Fischer,*
  879 F.3d 41 (2d Cir. 2018) ......................................... 19, 29

*Hill v. United States ex rel. Wampler,*
  298 U.S. 460 (1936) ...................................................... 34

*Lee v. Edwards,*
  101 F.3d 805 (2d Cir. 1996) .............................................. 24

*People v. Williams,*
  14 N.Y.3d 198 (2010) .................................................... 32

**Cases**                                                    **Page(s)**

*Scholle v. Cuban-Venezuelan Oil Voting Trust,*
    285 F.2d 318 (2d Cir. 1960) ................................................. 12

*United States v. Dupree,*
    706 F.3d 131 (2d Cir. 2013) ...................................... 11-12, 27

*United States v. Fernandez,*
    914 F.3d 1105 (7th Cir. 2019) ........................................... 11

*United States v. Figueroa,*
    548 F.3d 222 (2d Cir. 2008) ............................................. 13

*United States v. Sweiss,*
    814 F.2d 1208 (7th Cir. 1987) .......................................... 10

*United States v. White,*
    692 F.3d 235 (2d Cir. 2012) ...................................... 13, 27-28

*Vincent v. Annucci,*
    63 F.4th 145 (2d Cir. 2023) ...................................... passim

*Vincent v. Yelich,*
    718 F.3d 157 (2d Cir. 2013) ............................................ 34

**Rules**

Fed. R. Civ. P. 61 ................................................................ 20

Fed. R. Evid. 103 ...................................................... 8, 10, 20

Fed. R. Evid. 403 ............................................................... 27

# PRELIMINARY STATEMENT

As defendants-appellants explained in their opening brief, recent decisions by this Court require vacatur of the judgment here and a remand for further proceedings to allow the defendant state officials[1] to raise an impediments defense and properly hold plaintiff Jesus Santiago to his burden of proof on causation and damages. This Court held in *Vincent v. Annucci*, 63 F.4th 145 (2d Cir. 2023) (*Vincent II*), and confirmed in *Aponte v. Perez*, 75 F.4th 49 (2d Cir. 2023), that a plaintiff-offender like Santiago who is subjected to unpronounced post-release supervision (PRS) bears the burden of proving causation and damages. The Court clarified that if state officials claim that legal or other impediments prevented them from unilaterally releasing the plaintiff from PRS, then the plaintiff must establish that these impediments did not prevent or delay the plaintiff's release by the state officials.

---

[1] Defendants-appellants are Brian Fischer, Commissioner of the New York State Department of Corrections (DOCS) at all relevant times; Anthony Annucci, DOCS Deputy Commissioner and Counsel at all relevant times; and Terrence Tracy, Counsel for the New York State Division of Parole (DOP) at all relevant times.

During the pretrial proceedings in this case, the defendant state officials sought to raise and introduce evidence of impediments to Santiago's release from PRS between June 2007 and February 2008 (the period of damages relevant to defendants' appeal). The United States District Court for the Eastern District of New York (Matsumoto, J.) lacked the benefit of this Court's recent decisions in *Vincent II* and *Aponte*, which were issued after the jury trial and judgment in this case. Contrary to those (subsequent) decisions, the district court here ruled that any such impediments were irrelevant to damages and would not be permitted at trial—a legal error that was not harmless but rather relieved Santiago of his burden of proof and deprived defendants of a critical defense.

Specifically, at the pretrial stage, the district court made clear that the trial would not address causation, but rather would focus on the single issue of how much value to ascribe to Santiago's time in prison during the damages period. Defendants thus were precluded from presenting argument and evidence regarding both impediments to Santiago's release and their subjective understanding of such impediments, as relevant to their state of mind and punitive damages. So limited, the jury

trial resulted in an award of $100,000 in compensatory damages and $750,000 in punitive damages.

On appeal, Santiago provides no reason to depart from this Court's approach in *Vincent II* and *Aponte*, which require vacatur and remand for proper development of the record and consideration of impediments. Santiago primarily contends that defendants failed to preserve the issue of impediments, but he is mistaken. Defendants in fact raised the issue multiple times, and the district court repeatedly refused to entertain it. Santiago also mistakenly contends that the exclusion of argument and evidence of impediments, as well as defendants' subjective understanding of such impediments, constituted harmless error. This Court's precedents make clear that impediments are directly relevant to causation and intent, and the record here makes clear that defendants were left with essentially no defense after the district court precluded this issue.

The same analysis and remedy should apply to Santiago's cross-appeal seeking to revive his claim for damages for a separate three-month period of PRS between September and December 2010. The trial here was limited to a period of PRS between June 2007 and February 2008 because, at the summary judgment stage, the district court held that defendants

were entitled to qualified immunity for the subsequent period of PRS from September to December 2010.

Defendants do not dispute that, as Santiago contends, this Court has since rejected qualified immunity under similar circumstances. But Santiago is not entitled to a remand for a trial only on the value of damages, as he requests. Even if mistaken as to qualified immunity, the district court's reasoning shows that a factfinder could determine that defendants took prompt and reasonable actions in September 2010 under new state law amendments enacted in June 2008, which authorized and required defendants to refer Santiago to state court to resolve the PRS issue. A reasonable factfinder could further determine that defendants had released Santiago pursuant to a state court order in December 2010 as soon as legal and practical impediments were removed. *Vincent II* therefore requires that any remand on the cross-appeal include an instruction to consider such impediments to Santiago's release during this period from September to December 2010.

# ARGUMENT

## POINT I

### CONSISTENT WITH *VINCENT II* AND *APONTE*, THIS COURT SHOULD VACATE THE JUDGMENT AND REMAND FOR FURTHER PROCEEDINGS TO ALLOW EVIDENCE OF IMPEDIMENTS AND PROPERLY HOLD SANTIAGO TO HIS BURDEN OF PROOF

In *Vincent II*, this Court held that defendant Annucci, while not entitled to qualified immunity, was entitled to claim impediments to the release of plaintiff Shawn Vincent. *See* 63 F.4th at 154. Vincent would then bear the burden of proving that the impediments did not in fact prevent Annucci from unilaterally releasing Vincent. *Id.* at 154-55. Because the district court had failed to conduct this analysis—one this Court had not previously articulated—and thereby failed to hold Vincent to his burden of proof on causation and damages, this Court vacated the damages award. The Court instructed the district court to conduct fact-finding on the question of impediments and to determine the "validity and effect" of such impediments "upon the length of Vincent's unlawful incarceration." *Id.* at 154. The Court took the same approach in *Aponte*, directing the district court on remand to conduct this necessary analysis. 75 F.4th at 58. Because the district court here made the same error as

did the district courts in *Vincent II* and *Aponte*, the same relief is warranted.

In his response to defendants' appeal, Santiago argues that the Court should affirm the damages verdict and judgment for the period of PRS from June 2007 to February 2008 because (i) defendants failed to preserve the issue of impediments; (ii) *Vincent II* does not require consideration of impediments as a matter of law; and (iii) the district court's pretrial ruling excluding impediments evidence and argument at trial was harmless error. *See* Br. for Appellee ("Santiago Br.") at 20-44. He is wrong on all three counts. And as for Santiago's cross-appeal regarding the potential damages period from September to December 2010 (*see id.* at 47-48), *Vincent II* likewise requires a remand for an analysis of impediments.

## A. Defendants Properly Preserved the Impediments Issue.

Santiago's primary argument on appeal is that the Court should ignore the district court's legal error here because defendants failed to adequately preserve the issue of impediments below. *See* Santiago Br. at 24-30. The record firmly contradicts this argument. Although *Vincent II*—with its use of the specific term "impediments"—was issued after the verdict and judgment in this case, defendants raised the same issue in

pretrial proceedings and noted the overlap with the causation question at issue in *Vincent II*. (*See, e.g.*, Joint Appendix (J.A.) 470-471; *see also* J.A. 34.) At that time and thereafter, defendants made timely and repeated efforts to persuade the district court to allow evidence and argument regarding impediments and causation—to no avail. See Br. for Appellants ("Defs.' Br.") at 27-32, 35-37, 47-48.

Defendants' significant efforts to insert this critical issue went beyond those of the defendant in *Vincent II*. Yet this Court in *Vincent II* concluded that the district court had failed to conduct the proper analysis of causation and damages and remanded with instructions to correct this error. *See* 63 F.4th at 151, 153-55. The same relief is warranted here to enable defendants to raise the defense of impediments and to hold Santiago to his burden to prove that such impediments did not prevent defendants from unilaterally releasing him. Just as this Court did in *Aponte* (which, as in *Vincent II*, had a similarly sparse record regarding impediments), the judgment should be vacated and remanded based on the intervening decision in *Vincent II*. *See Aponte*, 75 F.4th at 58.

In any event, and contrary to Santiago's contentions (Santiago Br. at 26-28), defendants timely and adequately informed the district court in

pretrial proceedings of the impediments issue as bearing on causation and damages. To preserve a challenge to a ruling that excludes evidence, defendants must "inform[] the [district] court of its substance by an offer of proof, unless the substance was apparent from the context." Fed. R. Evid. 103(a)(2). Defendants preserved their challenge under this standard.

Defendants' motion in limine papers stated that defendants "should be allowed to argue that they were not the cause of [Santiago's] damages," that they "should be allowed to introduce evidence establishing that they did not cause [Santiago's] damages at the relevant times," and that state "law and the conduct of other State actors intervened to render futile any efforts" by defendants to resolve PRS sentencing errors. *See* Defs.' Mem. of Law in Supp. of Their Mots. *in Limine* at 12-13 (July 13, 2022), ECF No. 178.[2] Defendants' papers noted that defendants had never received Santiago's sentencing minutes (i.e., the transcript of his original sentencing hearing); defendants lacked legal authority to refer Santiago to the state courts to determine his proper sentence during the relevant damages

---

[2] ECF citations refer to district court filings in this case.

8

period (June 2007 to February 2008); and Santiago "should be held to his burden of proof." *Id.* at 13; *see* Defs.' Suppl. Mem. of Law in Response to the Court's Request at 3-4 (Nov. 21, 2022), ECF No. 198. As defense counsel further explained to the district court, defendants could testify as to their own efforts and personal knowledge of state law and district attorney and state court resistance to addressing potential sentencing errors at that time. (J.A. 471, 477, 486, 488.) And as to punitive damages, defense counsel emphasized that defendants must be allowed "to explain to the jury . . . what the reasons were that they did not take action" at that time. (J.A. 477; *see* J.A. 471, 486.)

Defendants also timely sought to admit corroborating documentary evidence, as shown by the pretrial motions and the joint pretrial order (*see* J.A. 468). For instance, defendants sought to admit state legislation demonstrating that only in June 2008 did defendants obtain legal authority to refer individuals like Santiago to state courts to resolve questions about potential errors in their PRS sentences. (J.A. 495-500.) Defendants also sought to present legislative history materials explaining that state correction and parole officials could not resolve potential PRS sentencing

errors unilaterally and must use the new state-law referral authority to trigger the necessary participation of state courts. (J.A. 492-493.)

Santiago's various technical arguments are meritless. Santiago notes that defendants did not submit their proposed testimony in the form of an affidavit attached to their pretrial motions. *See* Santiago Br. at 30. The federal rules do not impose any such formal requirement for an offer of proof; in fact, the rules excuse the need for *any* offer of proof if the substance of the evidence is apparent from context. *See* Fed. R. Evid. 103(a)(2); *see also United States v. Sweiss*, 814 F.2d 1208, 1211 (7th Cir. 1987) (no formal offer of proof required). And in practice, attorneys routinely inform the trial court orally of the substance of proposed testimony, as defense counsel did here (*see, e.g.*, J.A. 477-478, 486).

In a similar vein, Santiago notes that defendants did not formally move to admit the proposed exhibits that were attached to their motions in limine. *See* Santiago Br. at 25, 28-29. But the district court understood that the motions in limine sought permission for defendants to later offer the attached exhibits into evidence at trial—permission that the district court denied in its pretrial rulings. (*See, e.g.*, Special Appendix (S.A.) 40-41.) Santiago then repeatedly faults defendants for not offering at trial

the very testimony and evidence that the district court had precluded in those pretrial rulings. *See* Santiago Br. at 28-30. Defense counsel had no obligation to raise these issues again at trial because defendants' "position ha[d] previously been made clear to the trial court and it was apparent that further efforts to object would be unavailing." *See Anderson v. Branen*, 17 F.3d 552, 556-57 (2d Cir. 1994).

In addition, Santiago erroneously attacks as inadmissible hearsay the proposed testimony and exhibits related to district attorney and state court opposition. *See* Santiago Br. at 11, 29-30, 39. At the pretrial hearing, defense counsel agreed that defendants would not testify to hearsay communications from district attorneys for the truth of the matter asserted. But counsel explained that defendants could testify as to their own efforts to contact independent district attorneys and state courts, which—unlike defendants—had legal authority before June 2008 to address PRS sentencing issues like Santiago's. (*See* J.A. 486.) And such communications could be properly considered for the nonhearsay purposes of providing context and their effect on the listener (i.e., defendants) who understood that their own efforts in this respect would be futile. *See United States v. Fernandez*, 914 F.3d 1105, 1111 (7th Cir. 2019); *United*

States v. Dupree, 706 F.3d 131, 136 (2d Cir. 2013); *see also Scholle v. Cuban-Venezuelan Oil Voting Trust*, 285 F.2d 318, 322 (2d Cir. 1960).

Santiago likewise erroneously characterizes (Santiago Br. at 39) as inadmissible hearsay several of defendants' corroborating exhibits—i.e., briefs from the district attorney in charge of Santiago's case showing near-contemporaneous opposition to resentencing efforts (*see* J.A. 371-390 (Kings County District Attorney briefs filed in April and June 2007); *see also* J.A. 393-446). The district court here made no such ruling, and this Court has held similar court filings to be admissible for their effect on the listener. *See, e.g.*, *Dupree*, 706 F.3d at 136-37 (trial court order was admissible as evidence). Indeed, counsel for Santiago introduced statements from this Court's decision in *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006), as evidence at trial. (*See, e.g.*, J.A. 532.)

## B. The District Court Erred as a Matter of Law in Excusing Santiago from His Burden of Proving Causation and Damages.

The district court fundamentally erred in concluding that this Court's pre-*Vincent II* precedent on qualified immunity also resolved the question of impediments to causation and damages. (*See* J.A. 473-478; S.A. 48.) As this Court later explained in *Vincent II*, the qualified immunity analysis is separate from the issue of impediments, which remains relevant to the plaintiff's burden to establish causation and damages. The district court here thus erred as a matter of law, and thereby abused its discretion, in excluding defendants' arguments and evidence of impediments at trial.[3]

Although Santiago complains that defendants failed to identify the particular district court rulings that improperly excluded impediments evidence (Santiago Br. at 24-25, 30), this material is set forth in detail in

---

[3] Although Santiago repeatedly refers to "manifest error" as constituting an abuse of discretion (Santiago Br. at 3, 19, 24-25, 31, 39), it is well settled that a district court abuses its discretion when its evidentiary ruling "rests on an error of law (such as application of the wrong legal principle." *United States v. Figueroa*, 548 F.3d 222, 226 (2d Cir. 2008) (quotation marks omitted); *see also United States v. White*, 692 F.3d 235, 244 (2d Cir. 2012) (reiterating this rule); *Boyce v. Soundview Tech. Grp., Inc.*, 464 F.3d 376, 385 (2d Cir. 2006) (same).

defendants' opening brief (at 27-32, 35-37, 44-48, 50-51). To summarize, in its oral pretrial ruling on October 25, 2022, the district court reasoned that this Court's pre-*Vincent II* precedent denying qualified immunity necessarily established defendants' liability for all damages sustained. (J.A. 471, 473-476.) This reasoning ignored plaintiff's burden to establish both causation and damages, including whether any such damages were attributable to defendants' actions rather than to impediments that prevented defendants from unilaterally releasing Santiago from PRS. Instead of considering whether any impediments may have prevented or delayed the success of any such efforts, the court flatly prohibited defendants from arguing to the jury that their actions or omissions were not the "proximate cause" of Santiago's damages or that impediments such as "other state actors" prevented Santiago's release. (J.A. 473-474.) The court thus determined that the jury would not consider "alternative theories of causation" (J.A. 476) and would instead merely ascribe a value to Santiago's loss of liberty between June 2007 and February 2008. (J.A. 474, 476.) In a subsequent hearing on November 18, 2022, the district court referenced the qualified immunity analysis in *Betances v. Fischer*, 837 F.3d 162, 170 (2d Cir. 2016), and reiterated that defendants

would not be permitted to challenge causation or shift the blame to other impediments. (J.A. 477-478.)

At this same November hearing, Santiago also suggested that he might press a claim for punitive damages at trial. Defense counsel then argued that defendants should be permitted at least to introduce argument and evidence of their reasonable understanding of such impediments, as relevant to that claim. (*See* J.A. 477-479, 482.) After further briefing, the district court issued a written order precluding defendants from offering evidence of impediments to support their understanding and state of mind for the purpose of punitive damages. The district court noted that this Court's qualified immunity precedent had held that defendants failed to make objectively reasonable efforts promptly after *Earley* (*see* S.A. 41-45)—but the district court cited no precedent holding that defendants acted with malice or callous disregard (*see* S.A. 41-46). The district court then restated its view that this Court's qualified immunity precedent had already established "Defendants' liability (including causation)" (S.A. 48), and therefore reasoned that any impediments evidence would be more confusing than probative. (*See* S.A. 41-48.)

Contrary to Santiago's assertions on appeal (*see* Santiago Br. at 20-24, 35-44), the district court's pretrial rulings are inconsistent with this Court's later holding in *Vincent II* and improperly excused Santiago from his burden of proof at trial on causation and damages. The *Vincent II* decision makes clear that qualified immunity and causation are separate inquiries. In *Vincent II*, the Court first reaffirmed that defendant Annucci was not entitled to qualified immunity, 63 F.4th at 150-51, and then remanded the case to enable Annucci to raise any claimed impediments to the plaintiff Shawn Vincent's release, and to require Vincent to prove that such impediments did not impede Annucci's unilateral release of Vincent, *id.* at 154-55.

The reasoning in *Vincent II* further demonstrates that the district court legally erred here in equating qualified immunity and causation. This Court concluded that the record in *Vincent II*, which was sufficient to resolve the issue of qualified immunity, was deficient as to impediments and required further factfinding to decide the issues of causation and damages. *See id.* The circumstances are materially identical here, where counsel for Santiago introduced the same evidence supporting the

qualified immunity precedent, and where the district court barred defendants from introducing argument and evidence of impediments. *See* Santiago Br. at 40-44; *compare id.* at 13-17, *with Betances*, 837 F.3d at 167-70.

During the trial, counsel for Santiago noted that he was eliciting testimony from defendants based on the same evidence recited in *Betances* as to qualified immunity. (J.A. 534.) And Santiago admits on appeal that "[t]he evidence presented to the jury was effectively the same as" the evidence recited in this Court's qualified immunity cases. *See* Santiago Br. at 41; *see also id.* at 35-36. Meanwhile, the district court refused to allow defendants to introduce evidence of legal and practical impediments or to "argue to the jury that somebody other than the three defendants are responsible" for continuing to enforce PRS during that period. (J.A. 471; *see* J.A. 474, 476.)

Given these materially identical facts, Santiago cannot successfully distinguish this Court's decision in *Vincent II*, and his few attempts to do so fail. For instance, while Santiago describes *Vincent II* as a "narrow ruling" with little application outside that case (Santiago Br. at 23), *Vincent II* explains how to apply the general rule of causation in these

types of cases. Indeed, this Court has already applied *Vincent II*'s rule in *Aponte*, 75 F.4th at 58, and another district court has recognized the need to apply *Vincent II* in a related case, *see Betances v. Fischer*, No. 11-cv-3200, 2024 WL 182044, at \*1 (S.D.N.Y. Jan. 17, 2024).

Santiago errs further in contending that this Court has held that no impediments could possibly exist after 2006. *See* Santiago Br. at 35; *see also id.* at 33. For one thing, Santiago focuses exclusively on "practical" impediments to release (*id.* at 35), even though *Vincent II* made clear that defendants could raise "any impediments, legal or otherwise," 63 F.4th at 154. In addition, this Court has not set a time limit on impediments, and it is the plaintiff's burden to prove that any such time limit exists. *See id.* (plaintiff must prove onset date of damages). Rather than cutting off impediments in 2006, the Court in *Vincent II* noted that the plaintiff was subject to PRS through July 2008, *id.* at 148—as Santiago acknowledges (*see* Santiago Br. at 34). Yet the Court still remanded for factfinding

to determine whether the plaintiff could prove that he was entitled to damages for any portion of that period.[4] *See Vincent II*, 63 F.4th at 154-55.

Finally, Santiago suggests that *Vincent II* has no application here because Santiago's determinate sentence of imprisonment had expired by the time of the damages period (June 2007 to February 2008); thus, he could not have been properly resentenced to PRS at that time. *See* Santiago Br. at 32-35. But the same was true in *Vincent II*, where this Court clarified that the plaintiff could not have been properly resentenced to PRS during the damages period. 63 F.4th at 153. Even so, the Court recognized both that legal and other impediments may have prevented the state correction official from unilaterally releasing the plaintiff, and also that it was the plaintiff's burden to prove that such impediments did not prevent or delay his release. *Id.* at 154-55.

---

[4] Santiago's reliance on *Hassell v. Fischer* (Santiago Br. at 35-36) is misplaced. While the Court in *Hassell* discussed and denied qualified immunity during the potential period of liability, it did not consider the separate issue of impediments. *See* 879 F.3d 41, 50-52 (2d Cir. 2018) (affirming judgment of nominal damages for limited period of liability).

**C.    The District Court's Error at Issue in Defendants'
Appeal Was Not Harmless.**

An error in excluding evidence is harmless when it does not affect a party's "substantial rights." Fed. R. Civ. P. 61; *see* Fed. R. Evid. 103(a). Here, the exclusion of impediments evidence and argument improperly relieved Santiago of his burden of proof and severely prejudiced defendants' ability to present a credible defense. For these reasons, the district court's exclusion of the impediments issue was not harmless.

Defendants' opening brief (at 27-31, 35-37, 44-48, 50-51) described the claimed impediments, the content of defendants' proposed testimony, and the supporting documentation that defendants sought permission to introduce at trial. By contrast, Santiago's brief cherry-picks particular evidence and argues that the exclusion of each, viewed in isolation, was harmless. *See* Santiago Br. at 37-39; *see also id.* at 26-30. The cumulative impact of excluding this evidence and explanatory testimony prevented defendants from presenting a coherent theory and severely prejudiced the defense.

For example, defendants could have testified and presented corroborating evidence to show that, at the time of Santiago's original sentencing in 2002, New York penal law mandated a term of PRS. (*See*

J.A. 497; *see also* J.A. 256-257.) This same evidence would have shown that, at that time, the relevant stakeholders—state court judges, as well as district attorneys and criminal defense lawyers—understood such PRS terms as automatic without separate judicial pronouncement. (*See* J.A. 257, 470-471.) There was thus little dispute that the state courts intended to impose the PRS terms required by law, and that defendants abided by that judicial intent and general understanding when initially calculating Santiago's PRS term (before *Earley*). The district court nonetheless declined to permit such testimony and evidence. (*See* J.A. 471-476; *see also* J.A. 534-535.)

The evidence at trial showed that when defendants first received custody of Santiago, they calculated his sentence to include PRS. (*See* J.A. 530-531.) The evidence at trial also showed that, at that time, defendants could not confirm whether the sentencing judge had in fact pronounced PRS for Santiago during the sentencing hearing. Santiago's sentencing transcript was never sent by the state court to defendants (*see* J.A. 548-549, 552, 561), and indeed has never been located by defendants (*see* J.A. 112). Defendants instead had Santiago's commitment sheet, which was completed by a court clerk and not the sentencing judge, and

which did not include a section to report any term of PRS that may or may not have been pronounced by the judge. (J.A. 604; *see* J.A. 562.) That fact was important because, as this Court has expressly recognized, a commitment sheet prepared by a clerk cannot alter the actual sentence imposed by the court. *See Earley*, 451 F.3d at 75.

The trial evidence further showed that, in 2006, this Court issued its decision in *Earley* requiring oral pronouncement of PRS. (*See* J.A. 532.) But defendants were not permitted to introduce testimony and corroborating evidence showing that, at that time, defendants lacked legal authority to simply and unilaterally release all individuals whose clerk-completed commitment sheets were silent and thus ambiguous as to whether PRS had been pronounced by the judge at sentencing. (*See* J.A. 262-263, 308, 493.) Nor were defendants permitted to introduce testimony and corroborating documentation showing that, at this time, they lacked legal authority to refer such individuals to the state courts, which did have legal authority to determine whether PRS had been properly pronounced and to issue orders imposing PRS or releasing the individuals affected. (*See* J.A. 258, 263, 311, 491-500.)

Indeed, the district court excluded legislative history materials for June 2008 state legislation that was adopted to address these very impediments. As the Governor's memorandum for that legislation explained, there could be many situations where "the absence of sentencing minutes" would make it "impossible" for correction officials "to know whether PRS was properly imposed at the time of sentence," and "[s]uch matters are appropriate for judicial resolution." (J.A. 493.) But defendants could not point to this legislation and its conferral of authority on defendants—only in June 2008—to refer such individuals to state court to resolve these questions. (*See* J.A. 263-264, 492-493, 497-499.) The fact that such authority was provided in June 2008 provided still further corroboration that defendants lacked that authority prior to June 2008. And as the trial evidence showed, defendants promptly exercised that authority when Santiago returned to New York custody in 2010, after the enactment of the state legislation. (*See* J.A. 605-610.)

On a fully developed record, a factfinder could determine that practical and legal impediments prevented defendants from "simply and unilaterally releasing" Santiago between June 2007 through February 2008, and that defendants "needed court approval to eliminate the PRS

term," *see Vincent II*, 63 F.4th at 154. At a minimum, a factfinder could determine that defendants reasonably understood that these legal and practical impediments prevented them from unilaterally releasing Santiago through February 2008, and thus that defendants had not acted with the requisite "evil motive" or "reckless or callous indifference" required to award punitive damages. *See Lee v. Edwards*, 101 F.3d 805, 808 (2d Cir. 1996) (quotation marks omitted).

As Santiago admits (Santiago Br. at 36), defendants were not permitted at trial to explain that these impediments prevented them from unilaterally releasing Santiago after *Earley*, which left the jury "troubled by the Defendants' persistent failure to follow the clear ruling in *Earley*" (*id.* at 40). The exclusion of impediments therefore violated the "substantial right of [defendants] to have the jury make its decision on the basis of all admissible evidence offered." *See Applebaum v. American Exp. Isbrandtsen Lines*, 472 F.2d 56, 63 (2d Cir. 1972) (citing Fed. R. Civ. P. 61); *see also Boyce v. Soundview Tech. Grp., Inc.*, 464 F.3d 376, 385 (2d Cir. 2006) (exclusion of a party's "primary evidence in support of a material fact" that defeats the party's claim affects substantial rights (quotation marks omitted)).

Because the district court barred defendants from arguing and presenting evidence regarding impediments, the jury heard the one-sided narrative—repeated multiple times in Santiago's brief—that defendants unilaterally imposed PRS on Santiago contrary to federal law, deliberately chose not to release him from PRS, necessarily caused all of Santiago's damages, and had no logical and supported explanation for their actions. *See* Santiago Br. at 1-4, 12-17, 40-44. The jury therefore accepted Santiago's theory that it was a matter of mere data entry: defendants had added PRS via their own computer system and could have removed it just as easily. *See id.* at 2-4, 22-23. The jury did not consider any impediments, such as whether defendants had legal authority to release Santiago or to refer him to a state court, especially given the sentencing court's clear intent to impose PRS and the lack of clarity regarding whether the court in fact did so by pronouncing PRS at sentencing. By deciding in its pretrial rulings to exclude argument and evidence of impediments, the district court assured—indeed envisioned—that the jury would hear that "[t]he people who could have sent [Santiago] back for resentencing are the three defendants who had custody of him and should have done it, and they didn't. It's very simple." (J.A. 474.)

Nor was the district court's exclusionary ruling cured by the few snippets of testimony related to impediments that were introduced at trial in response to questions by *counsel for Santiago*. *See* Santiago Br. at 16 (citing J.A. 532-533, 557, 563-564), 27-28 (citing J.A. 557, 563-564), 30 (citing J.A. 532-533); *see also id.* at 40. Such testimony was necessarily limited and not later explored by defense counsel, who was precluded from introducing this evidence based on the pretrial rulings. Indeed, the district court denied defense counsel's attempts to introduce additional evidence regarding state law even after counsel for Santiago opened the door during his questioning of defendants. (*See* J.A. 534-536.)

Santiago highlights (*see* Santiago Br. at 16-17, 43-44) only one section of testimony elicited by defense counsel that the district court permitted as a follow-up to Santiago's counsel's questioning on the same topic. In that portion of testimony, Annucci testified that defendants "felt ultimately that the D.A., the judge and the defense lawyer who were involved in the original sentence, they were the parties that had to be brought together, come together and make the appropriate determination what relief should be done and we would ultimately abide by it." (J.A. 561.) But defense counsel could not elicit additional supporting

testimony or provide supporting exhibits to explain why defendants felt that way. (*See, e.g.*, J.A. 492-493, 497-499.) The precluded testimony and documentary evidence regarding defendants' lack of legal authority to do anything unilaterally, district attorney and state court opposition to sentencing relief at that time, and the legislative history of the 2008 amendments would have supported that explanation.

Santiago thus errs in contending that the arguments and evidence of impediments were irrelevant or cumulative, or that their probative value was "substantially outweighed" by the risk of confusing the jury under Federal Rule of Evidence 403. *See* Santiago Br. at 11-12, 29, 38, 44. The district court's Rule 403 analysis was premised on a legal error, *see Dupree*, 706 F.3d at 138—namely, that impediments as a matter of law are not a relevant or probative consideration at the trial that would not address causation. As *Vincent II* later made clear, impediments are directly relevant to causation and damages. And defendants' state of mind, especially their understanding of such impediments, is directly relevant to the intent or reckless disregard element required for punitive damages. That direct probative value far outweighs any concern with increasing the complexity of the trial to address causation. *See United States v.*

*White*, 692 F.3d 235, 246-47 (2d Cir. 2012) (evidence supporting theory with "complex reasoning" was still relevant and admissible).

Santiago then compounds the district court's error by focusing on the language and holdings of this Court's precedent denying defendants' claims of qualified immunity. He notes that little distinguishing evidence was presented at trial—a direct consequence of the pretrial rulings barring impediments—and urges the Court to affirm the judgment to avoid further delay. *See* Santiago Br. at 20-24. But *Vincent II* requires a fair trial that permits defendants to raise impediments and holds Santiago to his burden of proving causation and damages. Vacatur and remand is thus warranted despite the resulting delay (which may have been avoided if Santiago had agreed to defendants' request for a short adjournment of the trial pending this Court's decision in *Vincent II* (*see* J.A. 34, 470-472).)

**D.    The Same Relief Is Appropriate in Santiago's Cross-Appeal.**

In his cross-appeal, Santiago asserts that the district court erred in ruling, at the summary judgment stage, that qualified immunity bars damages for Santiago's time in defendants' custody from September to December 2010. *See* Santiago Br. at 47-48. According to Santiago (*id.* at 47), the district court's reasoning conflicts with this Court's decision in *Hassell v. Fischer*, 879 F.3d 41 (2d Cir. 2018). On appeal, defendants do not contest this asserted error.[5] A remand with instructions to conduct an impediments analysis is nonetheless warranted for this time period.

Indeed, the district court's reasoning in the summary judgment decision—even if mistaken as to qualified immunity—shows that a reasonable factfinder could determine that legal and other impediments prevented defendants from unilaterally releasing Santiago during this later time period. (*See* S.A. 31-33.) In February 2008, Santiago absconded to Virginia from federal and state supervision in New York.[6] (*See* J.A. 100,

─────────────

[5] But see *infra* at 33 (asserting general qualified immunity argument as to this PRS period from September to December 2010).

[6] Santiago asserts (Santiago Br. at 8 n.2) that he did not abscond because he had been conditionally released from his state prison sentence. Even setting aside his state PRS, Santiago had absconded from

*(continued on the next page)*

113-114, 145-146, 450.) Shortly thereafter, in June 2008, the New York Legislature passed state law amendments authorizing—indeed requiring—defendants to refer individuals in Santiago's circumstances to state court to address PRS sentences. (*See* J.A. 490-500.) The legislation provided that the state correction and parole agencies must refer to state court those individuals in their custody with commitment sheets that are silent as to PRS. (J.A. 498 (codified at Correction Law § 601-d(1)-(2) (2008)).) The state court must then assign counsel to the individual and comply with various deadlines to determine whether the individual had been properly sentenced to PRS, and to issue an order for the individual's continued commitment or release. (J.A. 498-499 (codified at Correction Law § 601-d(3)-(5) (2008)).)

After the enactment of these amendments in June 2008, Santiago returned to defendants' custody in New York in September 2010. (J.A. 114, 450-452.) Defendants promptly followed these state law procedures by referring Santiago to state court, which would determine whether Santiago had been properly sentenced to PRS or should be ordered

---

federal supervision requiring that he remain in New York. (*See* J.A. 615-616.) See also Defs.' Br. at 20, 22.

released. (J.A. 152-153.) By contrast, defendants here, as state correction and parole officials, lacked the legal authority to make this determination under state law. (*See* J.A. 493.) Defendants also lacked Santiago's sentencing minutes (J.A. 112) and thus had no practical basis to make this determination. Pursuant to the new state law procedures, the state court assigned counsel to Santiago, scheduled a hearing, determined that PRS had not been properly pronounced at his original sentencing, and ultimately issued an order of release in December 2010. (J.A. 152, 605-611; *see* J.A. 498-499.)

Here, the district court's summary judgment decision acknowledged some of these legal and practical impediments in finding that defendants took prompt and reasonable actions in September 2010. While not referring specifically to impediments (as *Vincent II* was issued several years later), the district court found that defendants had promptly followed the resentencing procedure set forth in state law, and that defendants could not have taken such action before September 2010 because Santiago was not in their custody. (S.A. 31-33.) These legal and other impediments may properly be assessed on remand.

Finally, Santiago misplaces his reliance (Santiago Br. at 47-48) on *People v. Williams*, 14 N.Y.3d 198 (2010), and on *Vincent II* in challenging defendants' actions during this period. Those two decisions clarify that individuals with unpronounced PRS terms who had already completed their determinate sentences of imprisonment could not properly be resentenced to PRS. *See Williams*, 14 N.Y.3d at 217; *Vincent II*, 63 F.4th at 153. In proceedings under the 2008 state law amendments, state courts would be required to resentence such individuals to sentences that did not include PRS. That is precisely what occurred here.[7] (*See* J.A. 605, 608 (citing *Williams*).)

---

[7] Santiago thus errs in suggesting that defendants used this process in an attempt to have him resentenced to PRS and continue his custody. *See* Santiago Br. at 48. Defendants' only role in this process was to refer him to the state court (J.A. 152-153), which would make an independent determination and order the appropriate relief (as it did here).

## POINT II

### DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

In their opening brief (at 52-53), defendants raised for preservation purposes the issue of qualified immunity that this Court has previously rejected, most recently in *Vincent II. See* 63 F.4th at 150-51. Defendants also pointed out (Defs.' Br. at 53-55) that *Earley* did not address a case like Santiago's, where the plaintiff was notified of and expressly agreed at his plea hearing to the PRS term subsequently enforced against him (J.A. 353).[8] Arguably, *Earley* did not clearly establish the law for such a case. While defendants directed this argument to the damages period at issue in defendants' appeal from the final judgment (June 2007 to February 2008), the argument applies equally to Santiago's cross-appeal challenging the district court's denial of damages for his second period in defendants' custody (September to December 2010).

---

[8] Santiago highlights (Santiago Br. at 46) the portion of the plea hearing in which he questioned the concurrent or consecutive nature of that state PRS term, but nonetheless expressly agreed to the PRS term (J.A. 353). And he benefited from DOCS and DOP's later treatment of that state PRS term as concurrent with his federal term of supervised release. (J.A. 616.)

In response, Santiago argues (Santiago Br. at 46) that qualified immunity cannot apply here because defendants are not police officers making split-second decisions during a violent confrontation. He is mistaken. A high-pressure, violent context may be considered in, but is not a necessary element of, the qualified immunity analysis, which may be applied in any situation where a government official performs a discretionary function. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (employee termination decision).

Santiago also mistakenly argues (Santiago Br. at 46-47) that defendants should have immediately recognized a due process violation in his case based on *Hill v. United States ex rel. Wampler*, 298 U.S. 460 (1936). This Court rejected that very argument in *Vincent v. Yelich*, 718 F.3d 157 (2d Cir. 2013). There, the Court held that the due process right to have PRS pronounced at sentencing was not clearly established until 2006 when the Court established it in *Earley*. *See Vincent*, 718 F.3d at 167-68.

## CONCLUSION

This Court should either vacate the judgment and remand for further proceedings, or reverse the judgment and dismiss the first amended complaint.

Dated:  New York, New York
        March 4, 2024

Respectfully submitted,

LETITIA JAMES
 *Attorney General*
 *State of New York*
Attorney for Appellants

By:  */s/ Blair J. Greenwald*
     BLAIR J. GREENWALD
     Assistant Solicitor General

BARBARA D. UNDERWOOD
 *Solicitor General*
ANDREA OSER
 *Deputy Solicitor General*
BLAIR J. GREENWALD
 *Assistant Solicitor General*
    *of Counsel*

28 Liberty Street
New York, NY 10005
(212) 416-6102

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Emily Paule, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 6,591 words and complies with the typeface requirements and length limits of Rule 32(a)(5)-(7) and the corresponding local rule.

 /s/ *Emily Paule*